## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **KELLY LEGERE**, | ) | CASE NO. |
| | ) | |
| *Individually and on behalf of all others* | ) | JUDGE |
| *similarly situated,* | ) | |
| | ) | **PLAINTIFF'S CLASS ACTION AND** |
| Plaintiff, | ) | **COLLECTIVE ACTION** |
| | ) | **COMPLAINT** |
| *v.* | ) | |
| | ) | ***(Jury Demand Endorse Hereon)*** |
| **ADVANCED BEHAVIORAL THERAPY** | ) | |
| **OH LLC** *d/b/a* **ADVANCED** | ) | |
| **BEHAVIORAL THERAPY**, | ) | |
| c/o Statutory Agent | ) | |
| Malka Levin | ) | |
| 2640 Whiton Rd. | ) | |
| University Hts., Ohio 44118, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Kelly Legere, on behalf of herself and all others similarly situated, for her Class

and Collective Action Complaint against Defendant Advanced Behavioral Therapy OH LLC,

*also doing business as* Advanced Behavioral Therapy (hereinafter referred to as "Advanced

Behavioral Therapy" or "Defendant"), states and alleges the following:

### INTRODUCTION

1. The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §

201, *et seq.*, is a broadly remedial and humanitarian statute designed to correct "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all

covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best

Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendant to pay all non-

exempt employees at least one and one-half times their regular rate of pay for all hours worked

in excess of forty (40) hours each workweek. 29 U.S.C. § 207. Ohio statutory law further required the payment of overtime compensation and/or contained other compensation requirements and/or penalties for unlawful wage practices and/or policies. *See* O.R.C. §§ 4111.03(A), 4113.15, 2307.60.

2.      Plaintiff brings this case to challenge the practices and policies of Defendant that willfully violate the FLSA, 29 U.S.C. §§ 201-219, as well as the statutes of the State of Ohio.

3.      Plaintiff brings this case as an FLSA and Ohio law collective action pursuant to 29 U.S.C. § 216(b) and O.R.C. § 4111.10 – which provide, respectively, that "[a]n action to recover the liability… may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated… [who] gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," and "[who] gives written consent to become such a party plaintiff and that consent is filed with the court in which the action is brought" – on behalf of herself and other employees who opt-into this action under the FLSA and Ohio law ("Opt-In Plaintiffs"), **COUNTS ONE** and **TWO**, respectively, of this Complaint.

4.      Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons who assert claims under O.R.C. §§ 4113.15 and 2307.60 (the "State Law Class"), **COUNTS THREE** and **FOUR**, respectively, of this Complaint.

5.      Plaintiff finally brings this case as an individual action pursuant to the Family and Medical Leave Act of 1993, as amended (the "FMLA"), 29 U.S.C. § 2601, *et seq.,* **COUNT FIVE** of this Complaint, as a result of Defendant's retaliatory, interfering, and otherwise unlawful conduct as a result of Plaintiff's exercise of her rights under that statute.

6.     Plaintiff, other Opt-In Plaintiffs, and State Law Class members now seek to exercise their rights to unlawfully unpaid overtime wages and additional statutory liquidated damages in this matter, other penalties and compensation available under federal and Ohio law, in addition to prejudgment and post-judgment interest, costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and Plaintiff's FMLA claims pursuant to 29 U.S.C. § 2615.

8.     This Court has supplemental jurisdiction over Plaintiff's claims under Ohio law because those claims are so related to the FLSA claims as to form part of the same case or controversy. 28 U.S.C. § 1367.

9.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and division and/or because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

10.     Plaintiff Legere is an individual, a citizen of the United States, and a resident of the State of Ohio. Plaintiff Legere has completed an "Opt-In Consent Form" which is filed as Exhibit A to this Complaint and is incorporated by reference herein (providing, in part, that "I hereby authorize the filing and prosecution of claims in my name and on my behalf, to contest the failure of **Advanced Behavioral Therapy OH LLC**, and/or its parents, subsidiaries, predecessors, successors, ownership, affiliated, and related entities and/or persons, to pay me proper wages, including overtime wages, under federal and/or state law").

11.     Defendant Advanced Behavioral Therapy OH LLC does business as "Advanced Behavioral Therapy."[1]

12.     Defendant Advanced Behavioral Therapy OH LLC, *doing business as* Advanced Behavioral Therapy, is an Ohio for-profit limited liability company with its headquarters[2] / principal place of business at 23500 Mercantile Rd., Beachwood, Ohio 44122.[3] According to records maintained by the Ohio Secretary of State, Defendant Advanced Behavioral Therapy OH LLC's Statutory Agent for service of process is Malka Levin, 2640 Whiton Rd., University Hts., Ohio 44118.[4]

## FACTUAL ALLEGATIONS

### Defendant's Business and Defendant's Status as an Employer

13.     Defendant Advanced Behavioral Therapy is a "Home-based, Center-based and School-based ABA Therapy services" company.[5] Advanced Behavioral Therapy employs board certified behavior analysts, registered behavior technicians, applied behavior analysis therapists, and/or other employees with similar job titles and/or duties in furtherance of its business purposes.[6] Defendant has operating locations, and provides home-based and related services, in Northeast Ohio, Central Ohio, and New Jersey.

---

[1] https://advancedabatherapy.com/ (last accessed November 11, 2023).
[2] *See* https://www.linkedin.com/company/advanced-behavioral-therapy (last accessed November 11, 2023).
[3] *See* https://advancedabatherapy.com/ (last accessed November 11, 2023).
[4] https://businesssearch.ohiosos.gov?=businessDetails/4597574 (last accessed November 11, 2023).
[5] https://advancedabatherapy.com/ (last accessed November 11, 2023).
[6] *See* https://advancedabatherapy.com/aba-careers-cleveland/ (last accessed November 11, 2023).

14.     Defendant is an "employer" of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class within the meaning of the FLSA, 29 U.S.C. § 203(d), and Ohio law, O.R.C. §§ 4111.03(D) and 4113.15, and is an employer of Plaintiff within the meaning of the FMLA, 29 U.S.C. § 2611.

15.     Defendant utilizes non-exempt employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class, in furtherance of its business purposes.

16.     At all times relevant, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

17.     At all times relevant, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

18.     Defendant operates and controls an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

19.     At all times relevant, Defendant was an employer of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class as Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment; determined employees' rates and methods of payment; and maintained or was required to maintain records, including employment records.

### Plaintiff's, other Opt-In Plaintiffs,' and State Law Class Members' Non-Exempt Employment Statuses with Defendant

20.     Plaintiff Legere was employed by Defendant from approximately April 2022 until September 2023 as a non-exempt employee. Plaintiff's job title was a registered behavioral technician.

21.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees within the meaning of 29 U.S.C. § 203(e).

22.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees engaged in commerce within the meaning of 29 U.S.C. § 207.

23.     Throughout their employments, Defendant classified and paid Plaintiff, as well as other Opt-In Plaintiffs and members of the State Law Class, as non-exempt employees.

24.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees within the meaning of 29 U.S.C. § 203(e) and Ohio law, O.R.C. §§ 4111.03(D)(3) and 4113.15.

25.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**<u>Defendant's Unlawful Failure to Pay Overtime Compensation as a Result of Defendant's Failure to Pay for All Hours, Including Overtime Hours, Worked</u>**
**(As to Plaintiff Legere, other Opt-In Plaintiffs, and members of the State Law Class; COUNTS ONE, TWO, THREE, and FOUR)**

26.     The FLSA and Ohio law required Defendant to pay overtime compensation to its employees at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40), as well as provided other pay requirements as applicable. 29 U.S.C. § 207; O.R.C. §§ 4111.03(A), 4113.15. *See* O.R.C. § 2307.60.

27.     Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class regularly worked more than forty (40) hours in a single workweek.

28.     Although Defendant suffered and permitted Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class

6

were willfully not properly paid overtime compensation for their overtime hours worked as required by the FLSA, 29 U.S.C. § 207, and Ohio law, O.R.C. §§ 4111.03(A), 4113.15. *See* O.R.C. § 2307.60.

29.     As provided by the FLSA and regulations that have the force of law, "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities" is considered compensable, a principle known as the continuous workday doctrine. 29 C.F.R. § 790.6(b) ("If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his 'workday' commences at the time he reports there for work in accordance with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time."); *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).

30.     Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class regularly work and perform the principal activities of their jobs but Defendant does not pay them for all of their time worked prior to, at the beginning, during, at the end, and after their workdays as further described below.

31.     While Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class regularly worked significant amounts of time prior to, at the beginning, during, at the end, and after their workdays, they were paid based on incomplete and improper records submitted to payroll as required by Defendant's management. Defendant did not pay non-exempt employees hourly wages. Instead, Defendant generally paid employees based on appointments with Defendant's clients that Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class attended, akin to a "piece work" method of payment. *See* 29 C.F.R. § 778.111.

32.      As Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were paid based on completed appointments, were not paid for missed appointments, were not paid for waiting time for tardy appointments, were not paid for company training, were not paid for time worked between appointments, were not paid for time worked after or before appointments during which these employees were required to perform other integral and indispensable activities (such as, for example, performing billing-related activities, corresponding with patients, coworkers, supervisors and third parties, meeting with coworkers, supervisors and third parties, and performing other manual, administrative, and/or clerical job tasks and duties), were not paid for time worked between appointments while these employees were traveling between client locations, and were not paid for all time that workers were required to be on-site at Defendant's premises during business hours, Defendant consistently failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for all hours, including overtime hours, worked, including times worked outside of the appointment times, as a result of Defendant's appoint-only payment policies and practices.

33.      The requirement to perform compensable work outside appointments, including work prior to, at the beginning, during, at the end, and after their workdays, was unavoidable due to work requirements, and the additional hours were required to be worked in order to complete their jobs. Defendant suffered and permitted Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to work prior to, at the beginning, during, at the end, and after their workdays, visually observed Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class working prior to, at the beginning, during, at the end, and after their workdays on a daily basis, and Defendant's supervisors exchanged emails and correspondence, as well as provided work instructions and/or training to workers, prior to, at the beginning, during, at the end, and

8

after Plaintiff's, other Opt-In Plaintiffs,' and members of the State Law Class's workdays on a daily basis. However, if Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class reported, or attempted to report, time worked for, by way of example, appointments in which a client missed the appointment, they would regularly still not be paid for this time worked. In addition, if a client was tardy or late to an appointment, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class would not be paid for this waiting time.

34.     Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class also regularly took work home for which they were not paid, such as to engage in time consuming phone calls, and exchanging emails and correspondence. Defendant suffered and permitted Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to work when they took work home, and performed work outside their workdays at home (or otherwise outside the office), for which they were not paid.

35.     In addition, as noted above, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were required to attend company training sessions and meetings. Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were not compensated for all hours of attendance at these training sessions and meetings because, again, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were generally paid only for completed appointments with Defendant's clients. The mandatory company training sessions and meetings directly related to Plaintiff's, other Opt-In Plaintiffs,' and members of the State Law Class's jobs. *See* 29 C.F.R. §§ 785.27, 785.29. These training sessions and meetings generally occurred during employee regular working hours. Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class performed productive work to the benefit of Defendant during attendance at the company training sessions and meetings and/or the work workers performed during the company

training sessions and meetings was predominately for Defendant's benefit. Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were not paid for all hours worked during attendance at the company training sessions and meetings which denied workers overtime compensation because Defendant's failure to pay workers for the work performed during the training sessions occurred during weeks in which workers worked in excess of forty (40) hours. Defendant knowingly and willfully failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for all hours worked during the company training sessions and meetings.

36.     In addition, as noted above, during their employments with Defendant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were required to travel, by way of example, to, from, and between client homes, during the workday as part of their job duties. Unlike ordinary commuting time, travel that is part of an employee's compensable workday, such as travel between different worksites between the start and the end of the workday, is considered part of the day's work and is compensable under the FLSA. 29 C.F.R. § 785.38 ("[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked."). Defendant's failure to pay workers for the work performed when they traveled to, from, and between client locations occurred during weeks in which workers worked in excess of forty (40) hours. Defendant knowingly and willfully failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for all hours worked when they were required to travel during the workday.

37.     Defendant's pay practices were the result of systematic and companywide policies originating at the management/directorial level.

38.     As a result, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were not paid for all hours worked, including overtime hours worked. As a result of the time

underpayment practices and policies employed by Defendant, Defendant's practices resulted in a system that virtually always resulted in less time paid than time worked to the detriment of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

39.     Although the additional pre-shift, during-shift, post-shift, and at-home work was compensable under the FLSA, the work was required by Defendant and the nature and volume of the work performed, the work was performed for Defendant's benefit and constituted part of employees' principal activities, and/or was a necessary and indispensable part of their principal activities, it was not paid as hours worked as required by the FLSA.

40.     Defendant's failure to ensure proper recordation of time and Defendant's failure to pay overtime as a result of the time underpayment practices resulted from knowing or reckless executive/directorial decisions. In addition, by denying Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class overtime compensation as required by the FLSA, Defendant's acts were not based upon good faith. Through legal counsel as well as experience and custom, Defendant possessed ample access to the regulations and statutory provisions requiring the necessity of proper time recording and payment systems, including accurate timekeeping practices, as well as the proper and prompt payment of overtime compensation under the provision of laws recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendant therefore knew about the overtime compensation requirements of the FLSA or acted in reckless disregard as to Defendant's obligations under the FLSA.

41.     Defendant, through its supervisors, directors, and managers, knew that Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were working the additional time for which they were not paid, as a result of Defendant's time underpayment practices and policies, and thus Defendant's actions were deliberate and willful within the meaning of the FLSA and Defendant lacked a good faith basis for its actions.

42.     Moreover, although Defendant suffered and permitted Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were not paid overtime for all of their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq*.

43.     Defendant consistently, willfully, and intentionally failed to pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for all hours, including overtime hours, worked, at the statutory overtime rate required. 29 U.S.C. § 207; O.R.C. § 4111.03(A). *See* O.R.C. §§ 4113.15, 2307.60. Defendant's failure to compensate Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay violates the FLSA, 29 U.S.C. § 207, and Ohio law, 29 U.S.C. § 207; O.R.C. § 4111.03(A). *See* O.R.C. §§ 4113.15, 2307.60.

**Defendant's Record Keeping Violations**
**(As to Plaintiff Legere, other Opt-In Plaintiffs, and members of the State Law Class;**
**COUNTS ONE, TWO, THREE, and FOUR)**

44.     The FLSA and Ohio law required Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

45.     For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

46.     Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

47.     Defendant failed to keep accurate records of hours worked of employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class. Thus, Defendant did not record or pay all hours worked in violation of the FLSA and Ohio law.

**Defendant's FMLA Violations**
**(As to Plaintiff Legere; COUNT V)**

48.     Plaintiff Legere had an exemplary employment record with no history of discipline during her tenure with Defendant.

13

49.     Plaintiff Legere regularly received positive reviews from supervisors and clients.

50.     On or about August 28, 2023, Plaintiff Legere approached Defendant's human resources department and told them that she would need to take some time off due to a qualifying serious medical condition under the FMLA.

51.     On or about August 28, 2023, Plaintiff Legere approached Defendant's human resources department and requested FMLA forms.

52.     As a result of Plaintiff Legere informing Defendant that Plaintiff Legere was requesting FMLA leave, and requesting FMLA forms, Defendant knew that Plaintiff Legere was exercising her rights under the FMLA.

53.     On or about August 29, 2023, Defendant's human resources department told Plaintiff Legere that it could not provide Plaintiff Legere with FMLA forms.

54.     On or about August 30, 2023, Plaintiff's supervisor requested Plaintiff Legere when she would be returning to work, and Plaintiff Legere ultimately informed Defendant that she would be returning to work September 1, 2023.

55.     On or about September 1, 2023, Plaintiff Legere returned to work and was informed that her clients had been reassigned and that she would not be returning to the center, Defendant's business location, and that she was required to transition to home-based clients only, and would be further prohibited from providing technician services at the center.

56.     Defendant's reassignment of Plaintiff Legere's clients to other technicians/therapists directly resulted in a severe reduction of nearly all of Plaintiff Legere's hours worked.

57.     As noted above, Plaintiff Legere was paid based on completed appointments only, and because Defendant reassigned all (or nearly all) of Plaintiff Legere's clients to other

14

behavioral technician / therapists, Plaintiff Legere had, essentially, no, or a significantly reduced, source of income with Defendant.

58.     As a result of the severe reduction of nearly all of her hours worked, due to the reassignment of her clients following her request for FMLA leave, Plaintiff was required to search for another job.

59.     Defendant saw Plaintiff Legere's request for FMLA time off a result of a qualifying serious medical condition as an opportunity to take away Plaintiff Legere's clients because Defendant knew Plaintiff Legere would have to take further time off because of her disability.

60.     Defendant saw Plaintiff Legere's request for FMLA time off as a result of a qualifying serious medical condition as an opportunity to take away Plaintiff Legere's source of income – as noted above, Plaintiff Legere was paid based on completed appointments only – in an attempt to force her to search for another job and quit her employment with Defendant.

61.     The stated reason for Defendant taking away Plaintiff Legere's clients was completely made up and pretextual and was, in fact, a direct result of Plaintiff Legere's request for FMLA time off.

62.     Defendant informed Plaintiff Legere of its decision to take away Plaintiff Legere's clients only five (5) days after Plaintiff Legere requested FMLA leave and FMLA paperwork.

63.     Defendant's decision to take away Plaintiff Legere's clients was without justifiable cause.

64.     Defendant's reason to take away Plaintiff Legere's clients was purely pretextual.

65.     Defendant's decision to take away Plaintiff Legere's clients, as a result of Plaintiff Legere's request for FMLA leave, resulted in damages for which Plaintiff Legere is entitled to recovery. By way of example, while Plaintiff Legere regularly worked forty (40) or more hours each workweek, after Plaintiff Legere's request for FMLA leave, Plaintiff's hours were reduced to, on average, less than fifteen (15) hours per workweek.

66.     Defendant based its decision to take away Plaintiff Legere's clients on her past and expected utilization of FMLA leave.

67.     There was a causal connection between Plaintiff Legere's FMLA request and Defendant's decision to take away Plaintiff Legere's clients and resultant reduction in Plaintiff Legere's income.

### The Willfulness of Defendant's Violations

68.     In addition to the above allegations demonstrating the willfulness of Defendant's wage violations as provided for above, Defendant knew that Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were entitled to overtime compensation under federal and state law or acted in reckless disregard for whether they were so entitled.

69.     By denying Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class overtime compensation as required by the FLSA and Ohio law, Defendant's acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendant possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and Ohio law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required.

Defendant therefore knew about the overtime compensation requirements of the FLSA and Ohio law, or acted in reckless disregard as to Defendant's obligations under these laws.

70.     Moreover, Defendant's overtime compensation payment obligations under the FLSA and Ohio law were clearly known by Defendant, but nonetheless willfully and intentionally disregarded. For example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting includes the language: "**OVERTIME** … [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..."[7] Defendant therefore knew about the overtime requirements of the FLSA and Ohio law, or acted in reckless disregard for whether Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were entitled to overtime compensation.

71.     In addition, on a regular basis, Plaintiff Legere complained to her supervisor and/or human resources that her paycheck was not correct because her wages were less than the wages she was owed including for, among other things, missed/canceled appointments, even despite that Defendant has a policy representing that Defendant would pay Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class for these types of occurrences. However, despite Plaintiff's complaints to management about - even a very small portion of the overall – unpaid

---

[7] *See, e.g.,* https://com.ohio.gov/static/documents/2023MWPoster.pdf (emphasis original) (last accessed November 11, 2023).

wages, compensation which would have been for hours that would have been paid as overtime wages, the pay issues were never corrected.

72.     Defendant intentionally, knowingly, and willfully circumvented the requirements of the FLSA and Ohio law.

73.     Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are therefore entitled to liquidated damages equal to the amount of all unpaid overtime compensation, pursuant to 29 U.S.C. § 260.

74.     In addition, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are entitled to recovery under Ohio's law providing for recoverable damages in this civil action for damages for criminal acts, O.R.C. § 2307.60.

75.     The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. §§ 4111.03, 4113.15, 2307.60; and resulted in the unlawful deprivation of wages to the benefit of Defendant and to the detriment of Defendant's employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

## FLSA AND OHIO COLLECTIVE OVERTIME ALLEGATIONS
### (As to Plaintiff Legere and Other Opt-In Plaintiffs; COUNTS ONE and TWO)

76.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

77.     Plaintiff brings this case under the FLSA, 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

78.     Plaintiff also brings this case pursuant to Ohio overtime statutory law, O.R.C. § 4111.01, *et seq*., including O.R.C. § 4111.10, which provides that "[n]o employee shall join as a

party plaintiff in any civil action that is brought under this section … unless that employee first gives written consent to become such a party plaintiff and that consent is filed with the court in which the action is brought."[8]

79.     Plaintiff brings this case on behalf of a group of employees of Defendant (referred to herein as the "Opt-In Plaintiffs") who assert claims under the overtime provisions of the FLSA, 29 U.S.C. § 201, *et seq*., and Ohio's statutory overtime provisions, O.R.C. § 4111.01, *et seq*. The potential "Opt-In Plaintiffs" who are "similarly situated" to Plaintiff with respect to Defendant's FLSA and Ohio overtime violations include:

**All current and former piece rate/appointment-paid employees of Defendant during the period of three years preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek. [9]**

80.     Such persons are "similarly situated" with respect to Defendant's FLSA and Ohio law overtime violations, as to the collective group of employees identified above, in that all were non-exempt employees of Defendant, all were subjected to and injured by Defendant's unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty (40) per workweek, and all have the same claims against Defendant for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

81.     Plaintiff and potential Opt-In Plaintiffs, having willfully been not paid at least the federal and Ohio overtime wage for the overtime hours they worked for Defendant pursuant to

---

[8] "Ohio law incorporates the FLSA's definitions, standards, and principles for its … overtime compensation provisions." *Hurt v. Commerce Energy, Inc.,* N.D.Ohio No. 1:12-CV-758, 2017 U.S. Dist. LEXIS 128850, at *3-5 (Aug. 14, 2017), fn. 9; Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02-.03.

[9] Plaintiff reserves the right to amend and refine the definition of the Opt-In Plaintiffs group members he seeks to have the Court serve notice based upon further investigation and discovery.

the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 207; O.R.C. § 4111.03.

82.     Plaintiff Legere and other potential Opt-In Plaintiffs are similarly situated because, among other reasons, Plaintiff Legere, as well as the other potential Opt-In Plaintiffs, are owed approximately hundreds to thousands of overtime hours when working for Defendant and for Defendant's benefit for which they were not paid overtime compensation as a result of Defendant's policies, and practices in conformity with these policies, that lead to less time paid than time worked.

83.     Plaintiff and potential Opt-In Plaintiffs have been similarly affected by the FLSA and Ohio law overtime violations of Defendant in one or more workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal and Ohio overtime wages.

84.     Plaintiff and potential Opt-In Plaintiffs have been damaged by Defendant's willful refusal to pay at least the federal and Ohio overtime wage for all overtime hours worked. As a result of Defendant's willful FLSA and Ohio law violations, each Plaintiff Legere and potential Opt-In Plaintiffs are similarly situated in that each is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

85.     Throughout her employment with Defendant, Plaintiff was subjected to the same timekeeping and payroll policies and practices by Defendant – including the time underreporting and underpayment policies, and practices in conformity with these policies/practices, that led to less time paid than time worked – that other potential Opt-In Plaintiffs were subjected to.

86.     Plaintiff is similarly situated to potential Opt-In Plaintiffs and will prosecute this action vigorously on their behalf.

20

87.    Plaintiff is entitled to send notice to all potential Opt-In Plaintiffs pursuant to Section 216(b) of the FLSA. Identification of potential Opt-In Plaintiffs is readily available from the timekeeping and compensation records, including timekeeping and payroll data, maintained by Defendant. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA and decisional law.

88.    Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

89.    Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to potential Opt-In Plaintiffs is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including, *inter alia*, whether Defendant satisfied the FLSA's and Ohio law's requirements for payment of the statutory overtime wages.

90.    The precise size and identity of the group of potential Opt-In Plaintiffs are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendant that Defendant was required to maintain, pursuant to the FLSA and Ohio law. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the group of potential Opt-In Plaintiffs consist of approximately one hundred or more persons.

## OHIO CLASS ACTION ALLEGATIONS
### (As to Plaintiff Legere and Other Members of the State Law Class;
### COUNTS THREE and FOUR)

91.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

92.     Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and a group of employees of Defendant who assert claims under O.R.C. §§ 4113.15 and 2307.60 (referred to herein as the "State Law Class"),[10] defined as:

> **All current and former piece rate/appointment-paid employees of Defendant during the period of six years[11] preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek.**

93.     There are questions of law or fact common to the State Law Class, including but not limited to:

> Whether Defendant denied Plaintiff and other members of the State Law Class earned and owed compensation where, among other things, these employees were not paid wages for their overtime hours worked at the overtime rates required to be paid, as well as wages for their non-overtime hours worked but not paid;

> Whether Defendant's denial of Plaintiff's and other members of the State Law Class's earned and owed compensation was a willful violation of federal and/or state law, entitling Plaintiff and other members of the State Law Class to exemplary, punitive, and/or other damages pursuant to O.R.C. § 2307.60;

> What amount of monetary relief will compensate Plaintiff and other members of the State Law Class for Defendant's failure to pay all compensation, including overtime and non-overtime compensation, owed when the wages were required to be paid.

---

[10] Plaintiff specifically does not bring a Fed. R. Civ. P. 23 class action under O.R.C. § 4111.10.
[11] *Harris v. Cunix*, 2022-Ohio-839, ¶ 36, 187 N.E.3d 582, 593 (Ct. App.) ("R.C. 2307.60(A)(1) is a remedial statute subject to the six-year statute of limitations").

94.     Plaintiff's claims are typical of the claims of other members of the State Law Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other State Law Class members.

95.     The State Law Class, outlined above, is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that the State Law Class consists of approximately one hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant has maintained, and was required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; Ohio Const. Art. II, § 34a.

96.     Plaintiff will fairly and adequately protect the interests of the State Law Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Law Class in this case.

97.     The questions of law or fact that are common to the State Law Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the State Law Class, listed above, are common to the State Law Class as a whole, and predominate over any questions affecting only individual class members.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would

be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)
### *On Behalf of Plaintiff Legere and Other Opt-In Plaintiffs who*
### *Join this Action Pursuant to 29 U.S.C. § 216(b)*

99.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

100.     Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and other Opt-In Plaintiffs who may join this case pursuant to 29 U.S.C. § 216(b).

101.     The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

102.     Plaintiff and other Opt-In Plaintiffs should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

103.     Defendant did not pay overtime compensation to Plaintiff and other Opt-In Plaintiffs at the rate of one and one-half times their regular rate for all of their overtime hours suffered or permitted to work by Defendant.

104.     Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Plaintiff and other Opt-In Plaintiffs overtime compensation. Defendant's deliberate failure to pay overtime compensation to Plaintiff and other Opt-In Plaintiffs was neither reasonable, nor was the decision not to pay overtime compensation made

in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

105. As a result of Defendant's willful violations of the FLSA, Plaintiff and other Opt-In Plaintiffs were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Plaintiff and other Opt-In Plaintiffs to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Overtime Violations)
### *On Behalf of Plaintiff Legere and Other Opt-In Plaintiffs who*
### *Join this Action Pursuant to O.R.C. § 4111.10*

106. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

107. Plaintiff brings this claim for violation of Ohio overtime law, O.R.C. § 4111.01, *et seq*., on behalf of herself and other Opt-In Plaintiffs, other individuals who "give[] written consent to become such a party plaintiff and [whose] consent is filed with the court in [] the action[.]" O.R.C. § 4111.10.

108. At all times relevant, Defendant was an entity covered by O.R.C. § 4111.03, and Plaintiff and other Opt-In Plaintiffs are employees, and/or have been employed by, Defendant within the meaning of O.R.C. § 4111.03.

109. Defendant's deliberate failure to compensate overtime hours worked "at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty (40)

hours in one workweek" violated the Ohio overtime compensation requirements set forth in O.R.C. § 4111.03.

110.    By its acts and omissions described in this Complaint, Defendant has violated O.R.C. § 4111.03, and Plaintiff and other Opt-In Plaintiffs have been injured as a result.

111.    Defendant's violations of Ohio law, O.R.C. § 4111.03(A) (providing that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty (40) hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938'"), injured Plaintiff and other Opt-In Plaintiffs in that they did not receive wages due to them pursuant to Ohio law and the FLSA.

112.    As a result of Defendant's willful violations of the FLSA and of O.R.C. § 4111.03, Plaintiff and other Opt-In Plaintiffs have been damaged in that they have not received wages due to them pursuant to Ohio law.

113.    O.R.C. 4111.10(A) provides that Defendant, having violated O.R.C. 4111.03 and injured Plaintiff and other Opt-In Plaintiffs, is "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

### COUNT THREE
**(Ohio Semimonthly Wage Payment Violations)**
*On Behalf of Plaintiff Legere, Opt-In Plaintiffs,*
*and Other State Law Class Members*

114.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

115.     Plaintiff brings this claim for violation of Ohio law, O.R.C. § 4113.15, on behalf of herself and other individuals who join this matter as Opt-In Plaintiffs, as well as members of the State Law Class.

116.     O.R.C. § 4113.15(A) required Defendant to pay "on or before the first day of each month … employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month." Defendant's failure to timely pay Plaintiff, Opt-In Plaintiffs, and members of the State Law Class all wages, including overtime and non-overtime wages, violated Ohio's semimonthly payment of wage requirements, O.R.C. § 4113.15(A).

117.     Plaintiff's, Opt-In Plaintiff's, and members of the State Law Class's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday in violation of O.R.C. § 4113.15. By its acts and omissions described in this Complaint, Defendant has violated Ohio's semimonthly payment of wage requirements, O.R.C. § 4113.15, and Plaintiff, Opt-In Plaintiffs, and members of the State Law Class have been injured as a result.

118.     Defendant's violations of Ohio's semimonthly payment of wage requirements, O.R.C. § 4113.15, injured Plaintiff, Opt-In Plaintiffs, and members of the State Law Class in that they did not receive wages due to them in a timely fashion as required by Ohio law.

119.     Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Plaintiff, Opt-In Plaintiffs, and members of the State Law Class all wages owed in a timely fashion as required by Ohio law. Defendant's deliberate failure to timely pay all compensation owed to Plaintiff, Opt-In Plaintiffs, and members of the State Law Class was neither reasonable, nor was the decision not to pay in accordance with O.R.C. §

4113.15 made in good faith. By engaging in these practices, Defendant willfully violated Ohio law and regulations that have the force of law.

120.    As a result of Defendant's violation of Ohio law, Plaintiff, Opt-In Plaintiffs, and members of the State Law Class are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

## COUNT FOUR
### (Civil Action for Damages for Criminal Acts)
*On Behalf of Plaintiff Legere, Opt-In Plaintiffs,*
*and Other State Law Class Members*

121.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

122.    Plaintiff brings this claim pursuant to Ohio's statue providing for Civil Violations for Criminal Acts, O.R.C. § 2307.60, on behalf of herself and other Opt-In Plaintiffs, and members of the State Law Class.

123.    At all times relevant, Defendant was an entity covered by the FLSA, 29 U.S.C. § 201, *et seq.,* and Plaintiff, Opt-In Plaintiffs, and members of the State Law Class have been employed by Defendant within the meaning of the FLSA.

124.    Defendant's failure to compensate overtime hours worked "at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty (40) hours in one workweek" was a willful violation of the FLSA, 29 U.S.C. § 201, *et seq.* Defendant's failure to timely pay Plaintiff, Opt-In Plaintiffs, and members of the State Law Class all overtime wages was a willful violation of the FLSA, 29 U.S.C. § 201, *et seq.*

125.     By its acts and omissions described in this Complaint, Defendant has willfully [12] violated the FLSA, and Plaintiff, Opt-In Plaintiffs, and members of the State Law Class have been injured as a result. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages. [13]

126.     Defendant's willful violations of federal law injured Plaintiff, Opt-In Plaintiffs, and members of the State Law Class in that they did not receive wages due to them pursuant to these statutory and/or other laws and regulations.

127.     As a result of Defendant's willful violations of the FLSA, Plaintiff, Opt-In Plaintiffs, and members of the State Law Class are entitled to compensatory, exemplary and punitive damages pursuant to O.R.C. § 2307.60.

## COUNT FIVE
### (FMLA Interference & Retaliation – 29 U.S.C. § 2615, *et seq.*)
### *On Behalf of Plaintiff Legere*

128.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

129.     At all times relevant, Defendant was an employer as defined by the FMLA under 29 U.S.C. § 2611(4)(A) because it was engaged in commerce or in any industry affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of Plaintiff Legere's worksite for each working day during each of 20 or more calendar

---

[12] 29 U.S.C. § 216(a) provides that "[a]ny person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both."

[13] *Buddenberg v. Weisdack*, 2020-Ohio-3832 (Ohio Supreme Court, 2020) (holding that claim under O.R.C. § 2307.60 requires a *criminal act*, not a criminal conviction); *see, e.g., Waters v. Pizza*, S.D.Ohio No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 11743, at *14 (Jan. 22, 2021) (certifying O.R.C. § 2307.60 Fed. R. Civ. P. 23 class action).

workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

130.     At all times relevant, Plaintiff Legere was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

131.     At all times relevant, Plaintiff Legere was qualified for her position of registered behavioral technician.

132.     At all times relevant, Defendant was aware of Plaintiff Legere's engagement in the protected activity of requesting and taking FMLA leave for a serious health condition.

133.     Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave. An employer is also prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

134.     Pursuant to 29 U.S.C. § 2614(a)(1), an employer is required to reinstate an employee to her former position or equivalent position when she returns from leave. *See also* 29 C.F.R. § 825.214(a). An "equivalent position" is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215. It must also involve the "same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.*

135.     Throughout Plaintiff Legere's employment relationship with Defendant, Plaintiff Legere exercised and/or attempted to exercise her rights under the FMLA when she requested FMLA leave as indicated above.

136.     Plaintiff Legere was eligible for FMLA leave in August, 2023, when she requested FMLA leave and FMLA paperwork. As indicated above, Plaintiff Legere requested the FMLA leave and FMLA paperwork as a result of a qualifying serious medical condition.

137.     In response to and despite Plaintiff Legere's attempts to exercise her rights under FMLA for protected medical leave, Defendant willfully and/or recklessly interfered with Plaintiff Legere's attempt to utilize FMLA rights that she reasonably believed to be eligible to receive, by taking away Plaintiff Legere's clients, virtually terminating Plaintiff's employment by reducing her hours to that of less than a part-time employee, and switching Plaintiff to a home-based position.

138.     Defendant willfully interfered with Plaintiff Legere's attempts to exercise her rights under FMLA for protected medical leave, in violation of 29 U.S.C. § 2615(a).

139.     Defendant also willfully retaliated and discriminated against Plaintiff Legere in violation of the FMLA, 29 U.S.C. § 2615(b).

140.     Defendant's retaliatory and FMLA-interfering conduct was engaged in recklessly, maliciously, and intentionally.

141.     Defendant lacked good faith to believe it had not violated the FMLA in its actions.

142.     Defendant's actions and inactions are in violation of 29 U.S.C.§ 2615(a)(1)-(2).

143.     By engaging in the foregoing conduct, Defendant has violated the FMLA by interfering with Plaintiff Legere's attempt to exercise FMLA rights, in violation of 29 U.S.C. § 2615(a)(1), and by retaliating or discriminating against Plaintiff Legere, in violation of U.S.C. § 2615(a)(2).

31

144.    As a direct and proximate result of Defendant's actions, Plaintiff Legere has suffered damages, in accordance with 29 U.S.C. § 2617. Defendant is liable to Plaintiff Legere for recovery of her back wages and other damages, including but not limited to recovery of double her actual damages in liquidated damages, exemplary and punitive damages, prejudgment interest, post-judgment interest, equitable relief as this Court may deem appropriate, interest, attorneys' fees, and costs.

[Plaintiff's, other Opt-In Plaintiffs,' and State Law Class Members'
*Prayer for Relief* follows on the next page.]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all other Opt-In Plaintiffs and members

of the State Law Class, respectfully prays that this Honorable Court:

A.      Promptly order Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, timekeeping, and other relevant records, necessary to determine similarly situated individuals;

B.      Promptly order Defendant to provide all contact information, including but not limited to names, dates of employment, addresses, telephone numbers, and email addresses, of similarly situated individuals;

C.      Prompt issuance of Court-approved notice to similarly-situated persons informing them of this action and enabling them to opt in;

D.      Tolling of the statute of limitations, *freely*, to all would-be Opt-In Plaintiffs under the FLSA and Ohio law to the date this matter was initially filed;[14]

E.      Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the State Law Class, who seek recovery under O.R.C. §§ 4113.15 and 2307.60;

F.      Enter judgment against Defendant, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) and Ohio law, and the members of the State Law Class;

G.      Enter judgment against Defendant, and in favor of Plaintiff, pursuant to the FMLA, 29 U.S.C. § 2601, *et seq.,* including 29 U.S.C. § 2617, and award Plaintiff all relief available as a result of Defendant's violations of the FMLA, including but not limited to any wages, salary, employment benefits, or other compensation denied or lost by Plaintiff by reason of the violation, award all monetary losses sustained by Plaintiff as a result of the violation, including wages, prejudgment interest, post-judgment interest, calculated at the prevailing rate, an additional amount as liquidated damages equal to the sum of the amount recovered above, and equitable relief as may be appropriate pursuant to the FMLA;

H.      Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) and Ohio law in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount, in addition to penalty damages;

---

[14] *Clark v. A&L Homecare & Training Ctr., LLC*, No. 22-3101/3102, 2023 U.S. App. LEXIS 12365, at *26 (6th Cir. May 19, 2023) (holding, by majority concurrence, that "given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs.")

I.     Award Plaintiff and other members of the State Law Class, including Opt-Ins to this litigation, all damages allowed by Ohio law, including but not limited to O.R.C. § 4113.15, which entitles Plaintiff and other members of the State Law Class to in an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per State Law Class member, whichever is greater;

J.     Award compensatory, exemplary and punitive damages under O.R.C. § 2307.60 to Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class;

K.    Designation of Plaintiff as representative of the Fed. R. Civ. P. 23 State Law Class, and counsel of record as Class Counsel for the State Law Class;

L.     Award Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class prejudgment interest, post-judgment interest, costs, and attorneys' fees incurred in prosecuting this action, expert fees, as well as statutory damages and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

M.    Enter such other and further relief as this Court deems equitable, just, and proper.


Respectfully Submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221      F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221      F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff, Opt-In Plaintiffs, and Putative Class Counsel*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)